FOR PUBLICATION

DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
APPELLATE DIVISION

MONICA BOYD-RICHARDS )
)
    *Appellant,* )
)
    v. ) D.C. Civ. App. No. 2004-116
)
ALFREDO LIMA )
)
    *Appellee.* )
)

On Appeal from the Superior Court of the Virgin Islands
Considered: October 15, 2010
Filed: June 14, 2017

BEFORE: **CURTIS V. GÓMEZ**, Judge of the District Court of the Virgin Islands; and **RAYMOND L. FINCH**, Senior Judge of the District Court of the Virgin Islands.[1]

APPEARANCES:

Monica Boyd Richards
    *Pro se appellant,*

Gregory H. Hodges
Dudley Topper & Feuerzeig
St. Thomas, U.S.V.I.
    *For the appellee.*

## MEMORANDUM OPINION

PER CURIAM,

    Monica Boyd-Richards ("Boyd-Richards") filed this appeal from an August 12, 2004 Order of the Superior Court of the Virgin Islands, Division of St. Thomas and St. John granting Alfredo Lima ("Lima")

---

[1] While Judge Darryl Donohue of the Superior Court of the Virgin Islands, Division of St. Croix, sat on the panel that considered this matter, he retired before the decision was issued.

restitution of his premises at Dronningens Gade No. 63, St. Thomas, Virgin Islands.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 2003, Lima owned property described as Dronningens Gade Number 63 (the "Property"). Boyd-Richards was a month-to-month tenant of the Property. In October, 28, 2003, Lima sent Boyd-Richards a notice that he was terminating her month-to-month tenancy and that she giving her 30 days to vacate the premises. Boyd-Richards failed to vacate the property at the end of the 30 days.

Thereafter, Lima initiated the underlying action for forcible entry and detainer against Boyd-Richards before the then-Virgin Islands Territorial Court. At a February 5, 2004, hearing, the trial court took evidence and heard arguments on the merits. Lima was not present at the hearing due to an illness. Lima's daughter, Margarita Kouns ("Kouns"), along with Lima's counsel, was present at the hearing. Kouns testified about the agreement between Lima and Boyd-Richards. A process server, Wilbur Marsh ("Marsh") testified that he served Boyd-Richards with the notice to quit the Property in October, 2003. After the presentation of evidence the Lima's evidence, the court continued the hearing to a later date.

On July 29, 2004, the trial court took further testimony from Lima and another one of his daughters, Lydia Lima Luton. After the presentation of this evidence, the Boyd-Richards requested a continuance so that she could produce a witness. The court again

continued the hearing until August 12, 2004. On that date, Boyd-Richards was unable to produce the witness, and the court then ruled that Lima was entitled to restitution of the Property.

Thereafter, Boyd-Richards, proceeding *pro se*, initiated the present appeal. She essentially raises four issues: (1) whether the Territorial Court exceeded its jurisdiction by construing this action as one for forcible entry and detainer; (2) whether the presiding judge, the Honorable Audrey L. Thomas, was impermissibly biased due to her familial ties to the Limas, which she did not disclose; (3) whether the judge's admonishments of Boyd-Richards for her conduct during the three hearings were impermissible or prejudicial; and (4) whether the Territorial Court's failure to rule on Boyd-Richard's post-trial motions resulted in prejudice.

## II. JURISDICTION AND STANDARD OF REVIEW

### A. Jurisdiction

This Court has jurisdiction to review final judgments and orders of the Superior Court of the Virgin Islands.[2] *See* Revised Organic Act of 1954 23A, 48 U.S.C. § 1613a; Act No. 6730 § 54(d)(1) (Omnibus Justice Act of 2005).

### B. Standard of Review

Where the trial court's determination was based on its application of legal precepts or interpretation of a statute, such determination is subject to *de novo* review. *See Saludes v. Ramos*, 744

---

[2] In 2005, the Territorial Court of the Virgin Islands was renamed the Superior Court of the Virgin Islands. *See* Act of Oct. 29, 2004, No. 6687, sec. 6, 2004 V.I. Legis. 6687 (2004).

F.2d 992 (3d Cir. 1984); *Mapes Monde, Ltd. v. A.H. Riise Gift Shop, Inc.*, 337 F. Supp. 2d 704, 707 (D.V.I. App. Div. 2004). Findings of fact made by the Superior Court are not to be disturbed unless they are clearly erroneous. *Lenhart v. Richards*, 17 V.I. 619 (3d Cir. 1980); *T-Shirt World, Inc. v. Artland, Inc.*, 20 V.I. 147 (D.V.I. 1983).

### III. ANALYSIS

A. Forcible Entry and Detainer Action

Where a "forcible entry is made upon any premises," or where a peaceable entry is made but "the possession is held by force, the person entitled to the premises may maintain an action to recover the possession thereof." V.I. CODE ANN. tit. 28, § 782(a). Where the amount in controversy is less than $500, the Territorial Court has exclusive jurisdiction. *Id.* at § 782(b). In all other cases, jurisdiction lies concurrently with the Territorial Court and the District Court of the Virgin Islands. *Id.*

Such a forcible entry and detainer action ("FED action") is an action of limited applicability and "is not available where the Defendant is occupying the property under a claim of right." *Barnes v. Weber*, 50 V.I. 167, 172 (V.I. Super. Ct. 2008). The adjudication of FED actions is conducted via a "simple summary proceeding" in which the deadlines typically used in civil actions are abbreviated and the issues considered are narrowly circumscribed. *See Estate of Thomas Mall, Inc. v. Territorial Court of the Virgin Islands*, 923 F.2d 258,

264 (3d Cir. 1991). The trade-off for the speedy resolution of FED actions is that "the scope of an FED proceeding is very limited. . . . As soon as a defendant in possession in an FED action raises a colorable defense requiring construction of an agreement between the property owner and the party in possession, an FED action will not lie." *Id.*

Boyd-Richards contends that there was a contract between her and Lima for her purchase of the Dronningens Gade property. She thus asserts that the issues presented went beyond the scope of a summary FED action, and the trial court erred by not transferring the matter to its civil docket.

In *Estate of Thomas Mall, Inc. v. Territorial Courts of the V.I.*, 923 F.2d 258 (3d Cir. 1991), the United States Court of Appeals for the Third Circuit addressed a landlord-tenant dispute between the Territorial Court of the Virgin Islands and Estate of Thomas Mall, Inc. ("Estate Thomas"). The Territorial Court had leased property from Estate Thomas. Pursuant to the lease agreement Estate Thomas was to supply water to the bathrooms on the property. *Id.* at 259. Estate Thomas did provide well water for the bathrooms on the property for a period of time. *Id.* However, at some point, the well water became contaminated and was determined to be non-potable. *Id.* The Territorial Court advised Estate Thomas of the water problems, but Estate Thomas failed to provide any remedy. *Id.* The Territorial Court then began withholding rent. *Id.* Estate Thomas responded by

initiating an FED action in the District Court of the Virgin Islands. *Id.*

The Third Circuit held that, given that Estate Thomas's claim rested on the interpretation of a lease agreement, proceeding with the matter as an FED action was in error:

> [I]t should have been apparent to the District Court that resolution of Estate Thomas' action requires construction of the parties' lease agreement. For instance, the Court would need to construe the lease provision where Estate Thomas agrees to provide water to the bathrooms, determine whether the Territorial Court exceeded its remedies under the lease by withholding rent until Estate Thomas provides useable water, and decide whether the parties have a valid lease at all. While these may not be the precise issues that will be litigated in an action for rent and ejectment, they are the kind of issues that are appropriately resolved in an ordinary civil action, not the summary FED proceeding.

*Id.* at 265.

In this case, at the first hearing, Boyd-Richards sought to introduce a document she claimed was a lease agreement between her and Lima. First, Boyd-Richards questioned Kouns about the document:

> Q: Do you recognize your father's signature on the bottom of that document, ma'am?
>
> A: It looks like his signature, but I don't recognize the document. We do not have a copy of this.

(J.A. Vol. II at 54.) Boyd-Richards then argued that Lima's absence made it impossible to present her case:

> Your Honor, Mr. Lima is not here. I asked for his presence. His daughter is now testifying that this is her father's signature . . . .

> Your Honor, I think that if it is as it is now, far enough into the sale, terms and conditions, enough have been said by someone who was not even there in June.
>
> Mr. Lima being ill, I would at this point, again, point out to the Court, please to allow a regular hearing on this matter because we are looking at a three quarter of a million dollar sale, that a negotiation, the buying and selling of property, which I did not want any rental . . . . This is not a regular landlord and tenant.

(App. Vol. II 54, 56-57.) The Court then continued the hearing and gave the parties the opportunity to brief the issue of whether there was any lease agreement and, if so, whether the case was properly brought as an FED action.

After hearing more evidence at the second hearing, including Lima's testimony, the Court concluded that Boyd-Richards was claiming only an equitable interest in the property, and thus Lima's claim was properly brought as an FED action:

> Although there was testimony of an attempt to have Ms. Boyd Richards sign a lease, a lease was never signed. Basically, the lease was not signed because, according to the testimony of Ms. Lima Luton, when that lease was offered to Ms. Boyd Richards, Ms. Richards said she didn't want the lease option agreement; she wanted a lease purchase agreement.
>
> . . . .
>
> No one disputed that Ms. Boyd Richards was trying to get Mr. Lima to sell her the property, but there was never any agreement, never any meeting of the minds, never any acceptance of Ms. Boyd Richards' offer by Mr. Lima.

(J.A. Vol. II at 109.)

The sole basis for Boyd-Richards's contention that this action is not an FED action is that the lease included as a term that Boyd-Richards would be given the option of purchasing the Property should Lima attempt to sell it. However, despite the trial court granting two continuances, Boyd-Richards was never able to produce any evidence of any agreement, written or otherwise, which contained such terms. Moreover, while Lima acknowledged that Boyd-Richards had sought to purchase the Property from him, he and his daughters denied that their agreement with Boyd-Richards ever contained any term concerning the ultimate purchase of the Property.

Thus, the only issue before the trial court was whether Boyd-Richards had a right to remain on the Property. The evidence showed that Boyd-Richards was in default on her rent obligations and had been given timely notice to vacate. Nothing in this determination required the trial court to construe or otherwise consider any terms in the lease. Accordingly, given the evidence adduced below, we cannot say it was error for the trial court to construe this matter as an FED action.

B.  **Bias of the Trial Judge**

Boyd-Richards claims that, after the conclusion of the FED proceedings, the trial judge revealed that she was related to the Limas. Boyd-Richards argues that this created an impermissible bias, and that the judge should have disclosed this information prior to the initiation of any proceedings.

In the Virgin Islands, no judge may preside over any action or proceeding in which "he is related to either party, . . . by blood or marriage within the third degree . . . ." V.I. CODE ANN. tit. 4, § 284(2) ("Section 284(2)"). "Generally, factual allegations of bias or prejudice of the judge must be accepted as true regardless of the truth or falsity thereof." *Virgin Islands v. 8560 Square Feet of Land*, 1999 WL 970755, at *2 (V.I. Terr. Ct. 1999). However, "the facts alleged by the party arguing disqualification [must] reflect a clear probability that the judge is biased against that party." *Id.* (quoting *Government of the Virgin Islands v. Gereau*, 502 F.2d 914 (3d Cir. 1974)) (internal quotation marks omitted).

In *Virgin Islands v. 8560 Square Feet of Land*, 1999 WL 970755 (V.I. Terr. Ct. 1999), a condemnation action, the presiding judge of the Territorial Court signed a "Declaration of Taking" which stated that the condemnation was necessary to provide urgently needed parking. *Id.* at *1. Although the case was assigned to a different Territorial Court judge, the defendant sought to disqualify the entire Territorial Court. *Id.* The Territorial Court denied the defendant's motion to disqualify, noting that "Defense counsel has not offered one factual allegation to support the conflict of interest claim against any judge. Instead, defense counsel . . . has resorted to conclusory statements completely unsupported by any person-specific factual allegations which raise a probability of bias." *Id.* at *2.

Here, Boyd-Richards likewise fails to allege bias with any specificity or particularity. Moreover, there is no record evidence that the judge is related to any of the parties. Further, even assuming there is a familial relationship between Judge Thomas and the Limas, we cannot determine whether the relationship falls within the scope of Section 284(2), which only applies to familial relationships "within the third degree." V.I. CODE ANN. tit. 4, § 284(2). Thus we are unable to say that Judge Thomas was required to recuse herself.

### C. Admonishments

Boyd-Richards contends that the Court's admonishments during her argument and examination of witnesses impaired her ability to put on her defense.

The Supreme Court has made it clear that "expressions of impatience, dissatisfaction, annoyance, and even anger" do not establish bias or partiality. *Liteky v. United States*, 510 U.S. 540, 555-56 (1994). "A judge's ordinary efforts at courtroom administration--even a stern and short tempered judge's ordinary efforts at courtroom administration--remain immune." *Id.* at 556. Indeed, only in the most extreme cases may a predisposition to one side or another developed during the course of the proceedings demand recusal. *Id.* at 554.

In the present case, after repeatedly attempting to get Boyd-Richards to temper her emotions in the courtroom, the trial judge had the following exchange with Boyd-Richards:

> THE COURT: Just a minute. One question at a time, otherwise, I am going to ask you to sit down and I will rule without the benefit of your examining witness.
>
> THE DEFENDANT: Yes.
>
> THE COURT: You are a former member of the Bar. You know how to conduct yourself in Court, so I am not going to be patient with you as I would be with a lay person.

(J.A. Vol. II at 51.) Additionally, during Boyd-Richards's cross-examination, the Court had to remind Boyd-Richards several times to allow the witness to respond to questions.

These few instances do not suggest any bias on the part of Judge Thomas. In fact, Judge Thomas appears to have been engaging in nothing more than ordinary efforts at courtroom administration. *See Liteky*, 510 U.S. at 556. Requesting that a counsel permit witnesses to answer questions, or proceed in a calm and composed manner, do not reveal or imply any bias or prejudice on behalf of the court. Moreover, we note that the trial court was quite lenient with the presentation of Boyd-Richards's case, twice granting continuances for several months so that she could make arguments about the lease agreement or present the testimony of other witnesses. Thus we cannot say that Judge Thomas's conduct during the proceedings below prejudiced Boyd-Richards in any way.

D.  <u>Failure to Rule on Post-Trial Motions</u>

Boyd-Richards asserts that the trial judge "immediately left all post-trial pleas and Motions in the hands of the clerk to be processed and signed by any other Judge forced to rubberstamp her sentiments."

(Appellant's Br. 2.) Boyd-Richards has failed to provide the Court with the docket sheet in this matter. Furthermore, she has not directed the Court to any motions of which the trial court failed to dispose. Rather, the record demonstrates that following its restitution order, the trial court promptly ruled on a motion by Boyd-Richards for a stay pending appeal. There is thus simply no evidentiary support for Boyd-Richards' claim that the trial judge neglected post-hearing motions in this matter.

## IV. CONCLUSION

For the reasons discussed above, the Court will affirm the Superior Court's Order granting Lima restitution of the Property. An appropriate judgment follows.